***E-FILED 2/5/09***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KWONG MEI LAN MIRANA,<br><br>    Applicant,<br><br>v.<br><br>BATTERY TAI-SHING CORP., et. al.,<br><br>    Respondents.<br>_____/ | NO. C 08-80142 MISC. JF (RS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL** |

I. INTRODUCTION

Applicant Kwong Mei Lan Mirana ("Kwong") moves to compel compliance with subpoenas seeking deposition testimony and documents for use in proceedings related to her divorce in Hong Kong. Pursuant to 28 U.S.C. § 1782, Kwong served subpoenas on ten United States companies (the "entities")[1] and The Jane Wai-Po Revocable Trust (the "trust") (collectively, "respondents"). Respondents object to the subpoenas and presently move to quash them. For the reasons discussed below, the motion to compel and the motion to quash will be granted in part and denied in part.

---

[1] The entities are Battery Tai-Shing Corp.; 100 Bush Corp.; 300 Prospect Properties, Inc.; Almaden Plaza Properties, LLC; Almaden Plaza Shopping Center, Inc.; Brothers International Holdings Corp. ("Brothers Holdings"); Brothers International Corporation; Edgewater Holdings Corp.; Dragon Capital Corp.; and Snake Capital Corp.

1

## II.  BACKGROUND

Kwong and Joshua Kwan married in Hong Kong on August 24, 1983, and divorced on February 26, 2007. They currently are involved in legal proceedings in Hong Kong to determine the amount of financial support Kwong will receive from Kwan. An issue in the Hong Kong action is whether Kwan has, or had during the marriage, beneficial interest in the United States companies listed above. During discovery in Hong Kong, Kwan admitted that he held 48.9% of the shares of Kwan International N.V., a Netherlands company. Kwan International owns Brothers Holdings, a respondent in this proceeding. Brothers Holdings, in turn, owns the remaining United States companies. Through his ownership of Kwan International, Kwan indirectly held shares in all of the entities.

In 2005, Kwan transferred his shares in Kwan International to his father without consideration. Prior to 2005, Kwan claims that he held the shares in trust for his father and did not possess beneficial ownership. On October 3, 2008, Kwan was terminated as a director and officer of all of the United States companies. Thus, Kwan stated in his fifth affidavit in the Hong Kong action that he does not have possession, custody, or control of documents relating to the ownership or assets of the entities.

Under 28 U.S.C. § 1782, Kwong seeks discovery from respondents for use in the Hong Kong divorce proceeding. Kwong's application for issuance of the Section 1782 subpoenas was granted by this Court on September 19, 2008, and they were served on respondents. The served subpoenas request deposition testimony as well as production of documents. The documents and testimony sought generally fall into four categories: (1) actual and beneficial ownership of the entities; (2) transactions with third parties likely to reveal transfers of value to Kwan; (3) the value of each respondent, including financial statements and balance sheets; and (4) income or income substitutes provided to Kwan by respondents.

## III.  DISCUSSION

A.  <u>Sufficiency of Service</u>

Where a subpoena requires the appearance of a witness, it must include a tender of fees for one day's attendance and mileage. Fed. R. Civ. P. 45(b)(1). Failure to tender fees invalidates the

service with respect to the request for testimony. *CF&I Steel Corp. v. Mitsui & Co.*, 713 F.2d 494, 496 (9th Cir. 1983). Because Kwong did not tender witness fees with the subpoenas, the deposition testimony will not be compelled. As the defect relates only to the request for testimony, it does not invalidate the request for production of documents. *First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 n.6 (S.D.N.Y. 2000).

Respondents also argue that the subpoenas requesting documents are invalid as to nine of them because they were not served on a party that could accept service.[2] Kwong's subpoenas were served in September 2008 and respondents initially did not contest the service. Where a party has actual notice, failure to make a timely objection waives insufficiency of service. *E. & J. Gallo Winery v. EnCana Energy Serv., Inc.*, No. CVF03-5412AWI LJO, 2005 WL 3710352, at *4 (E.D. Cal. Aug. 15, 2005). In this case, respondents served their written objections to the document requests and participated in a meet-and-confer conference without raising the insufficiency of service. They also partially responded to the subpoenas by producing eight pages of documents. It was not until their December 2008 brief in opposition to Kwong's motion to compel, over three months later, that respondents first objected to service of the subpoenas. Because respondents did not object for several months and began to produce documents, their objection to insufficiency of service was waived.

B.  Document Production

1.  Relevance

Respondents contend that information relevant to their ownership and assets is irrelevant to the divorce proceeding in Hong Kong. In his fifth Hong Kong affidavit, Kwan asserted that he currently does not own shares in any of the entities. Based on this statement, respondents argue that Kwan has no beneficial interest in any of the respondents. An order from the District Court of the Hong Kong Special Administrative Region, however, provided that financial and shareholding information from the United States entities was relevant to its proceeding. Hebert Decl., Ex. A, ¶ 68. The Hong Kong court concluded that whether everything belongs to the father or other family

---

[2] Respondents do not dispute that the subpoenas were properly served on Brothers International Corp. and Edgewater Holdings Corp.

3

members, and not Kwan, will be a question for trial. *Id.*, ¶ 69. The materials Kwong seeks, therefore, are relevant to the underlying proceeding.

### 2. Time Period for Document Discovery

Generally, in Hong Kong divorce proceedings, discovery reaches back two years from the date of a divorce petition. In this case, Kwan filed his petition for divorce on May 23, 2006, but the couple separated two years earlier in 2004. At Kwong's request, the Hong Kong court extended discovery back two years from the date of separation instead of the petition for divorce. Courts have considerable discretion under 28 U.S.C. § 1782 regarding the scope of discovery ordered for use in a foreign tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-61 (2004). A court's discretion to order production of materials is not limited to those materials that could be discovered if located within the foreign jurisdiction. *Id.* at 260. Alternately, a court may deny discovery or impose appropriate limitations. *Id.* at 260-61.

Here, Kwong seeks discovery of documents relating to ownership and assets of respondents dating from the beginning of her marriage in 1983. According to Kwong, the net worth of Kwan's 48.9% share of the entities at the time he transferred them to his father includes the assets accumulated from 1983 through 2005. She reasons that transfers of assets starting from 1983 could affect the total value that the Hong Kong court will consider in her financial support proceeding. Respondents counter that the Hong Kong court already determined that the relevant period for discovery begins on January 1, 2002. They argue that because discovery prior to 2002 will not be used in Hong Kong to value the marital property, going back to 1983 is not appropriate.

Despite respondents' arguments to the contrary, documents prior to 2002 are relevant to whether Kwan possesses a beneficial interest in the entities or other property. Kwong seeks information related to the history of ownership of the entities, including transfers prior to 2002, that may shed light on ownership during the time frame relevant in the Hong Kong action. In fact, the Hong Kong court recognized that the assets of the Kwan family may be held by corporations and/or the trust. Hebert Decl., Ex. A, ¶ 69. As noted by Kwong, the court stated that a reason to go behind the corporate or trust veil was to assess Kwan's ownership interest. *Id.* Because the history of ownership transfers before 2002 may be relevant to understanding actual ownership in 2002 and

4

1  thereafter, discovery into ownership of respondents will not be limited only back to that date. The
2  remaining issue, therefore, is how far back discovery should extend.

3  Respondents object to Kwong's request to produce ownership materials including transfers of
4  shares and assets as overly burdensome, particularly to the extent of any request for materials prior
5  to 2002. During the Hong Kong action, Kwan submitted two letters from his attorney in the United
6  States stating that she reviewed documents for all ten entities. *Id.*, ¶ 29. The first letter claims that
7  Kwan currently is not a shareholder of any of the entities, while the second letter asserts that he has
8  not been a shareholder during the past ten years. *Id.* The records, therefore, have already been
9  reviewed by Kwan's counsel and any argument regarding burden is dubious.

10  While documents predating 2002 may be necessary to establish the ownership of the entities
11  as of 2002, the relevance of pre-2002 documents related to respondents' value or income provided to
12  Kwan is tenuous. The Hong Kong court concluded that allowing discovery back to 2002 would be
13  sufficient to provide it with a snapshot of the family's assets prior to the breakdown of the
14  relationship. *Id.*, ¶ 55. Accordingly, respondents shall produce documents related to the value of
15  each of the respondents and income or income substitutes provided to Kwan from 2002 to the
16  present. As noted above, as to evidence relating to ownership as opposed to value, such material
17  shall be produced from 1998 forward.

18  C.   Cost Shifting

19  As non-parties to the Hong Kong action, respondents request costs for complying with the
20  subpoenas. Where a court orders a non-party to comply with production, the Federal Rules of Civil
21  Procedure mandate cost shifting to protect the non-party against significant expense. Fed. R. Civ. P.
22  45(c)(2)(B). Kwong contends that respondents are only non-parties because Kwan transferred his
23  48.9% ownership to his father without consideration in 2005. Hence, she argues that the transfer
24  may not be valid and, in any case, respondents are acting as proxies for Kwan. The extent of Kwan's
25  ownership and control of the entities before and after 2005 is one of the key issues that Kwong seeks
26  to explore in the requested discovery. Until those facts are developed, the entities as well as the trust
27  must be regarded as non-parties to the Hong Kong divorce proceeding.

28  Rule 45 does not require that all costs of production incurred by non-parties be charged

5

against the requesting party. Cost shifting is necessary only to protect non-parties against significant costs. *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (requiring cost shifting sufficient to render the non-party's expenses "non-significant"). Thus, a non-party may be required to bear some or all of its costs, depending upon the circumstances. *See, e.g., Crandall v. City & County of Denver*, No. 05-cv-00242-MSK-MEH, 2007 WL 162743, at *1 (D. Colo. Jan. 17, 2007) (shifting half of the non-parties' costs to plaintiff). As Kwong points out, however, respondents have not offered any facts demonstrating that they will incur significant expense if ordered to comply with the subpoenas. While respondents are not foreclosed from requesting by motion reimbursement in the event that *significant* costs are incurred in complying with the subpoenas, an order setting the amount of cost shifting at this point is unwarranted.

## IV.  CONCLUSION

Accordingly, the motions to compel and to quash are granted in part and denied in part as follows:

(1) the motion to quash the deposition testimony is granted;

(2) the motion to compel production of documents from 1998 to the present relating to ownership of the respondents including transfers of shares and assets is granted; and

(3) the motion to compel production of documents from 2002 to the present relating to the value of the respondents and income provided to Kwan is granted, but denied for documents dated prior to 2002.

The respondents shall produce these documents within twenty days of the date of this order as outlined above. As agreed by the parties at the hearing on January 21, 2009, the documents are to be produced subject to a protective order governing the handling of confidential information.

IT IS SO ORDERED.

Dated: February 5, 2009

RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Kathleen V. Fisher   kfisher@calvoclark.com, sf-receptionist@calvoclark.com

Nicole Michelle Norris    nnorris@winston.com, docketsf@winston.com, ttualaulelei@winston.com

Seung Lee    slee@calvoclark.com, lthornton@calvoclark.com, sf-receptionist@calvoclark.com

William N. Hebert    whebert@calvoclark.com, cheryluntalan@calvoclark.com, ddinh@calvoclark.com, sfrecep@calvoclark.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 2/5/09**                                                                 **Richard W. Wieking, Clerk**

                                                                                  **By:**     **Chambers**

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL
C 08-80142 MISC. JF (RS)